## IN THE UNITED STATES DISTRICT COURT
## OF KANSAS

| | | |
|---|---|---|
| **MORGAN MILES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No.**  2:21-cv-2006 |
| | ) | |
| **KARYA KANSAS PROPERTY** | ) | **Jury Demand** |
| **MANAGEMENT, LLC** | ) | |
| **Serve: Registered Agent** | ) | |
| **Levy Craig Law Firm** | ) | |
| **8101 College Blvd, Suite 100** | ) | |
| **Overland Park, KS 66210** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| **NITYA CAPITAL, LLC** | ) | |
| **Serve: Registered Agent** | ) | |
| **Swapnil Agarwal** | ) | |
| **4801 Woodway Drive, Suite 300** | ) | |
| **Houston, TX 77056 USA** | ) | |
| | ) | |
| **Defendant.** | ) | |

### COMPLAINT

COMES NOW Plaintiff Morgan Miles ("Miles"), by and through her counsel, and for her claims against Defendant Karya Kansas Property Management, LLC ("Karya") and Nitya Capital, LLC ("Nitya"), states and alleges:

### NATURE OF PLAINTIFF'S CLAIMS

Miles worked for Defendants for five (5) months, beginning in August 2019, before being dismissed on January 9, 2020. She worked as their Community Assistant Manager at the Clear Creek Apartments ("Clear Creek"), a residential apartment complex located in Overland Park, Kansas. At all relevant times herein, Karya owned and operated Clear Creek Apartments. At all relevant times herein, Nitya exercised common ownership and control over Karya to the

extent that the two entities constituted an "integrated employer". Despite her loyal and capable service, Karya and Nitya ("Defendants") discriminated and retaliated against Miles in violation of the Pregnancy Discrimination Act ("PDA") and the Kansas Act Against Discrimination ("KAAD") after she advised her supervisor that she was six (6) months pregnant. Miles was subjected to several acts of retaliation including the termination of her employment during the weeks following the disclosure of her pregnancy.

After Miles was discharged from her employment, she requested notice from Karya pursuant to the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). Miles personally delivered to her supervisor a handwritten note with her current residential address to assure she received the COBRA notice. Miles also left follow-up voice mail messages with Karya's human resources director requesting COBRA notice be sent to her current mailing address. Miles never received COBRA notification. As a result, she incurred out-of-pocket charges for two emergency room visits related to her pregnancy. Had she received the COBRA notice at the address she provided, she would have elected continuation coverage, which would have covered the charges.

## **PARTIES**

1.      Plaintiff Miles is a citizen of the United States and resident of Olathe, Johnson County, Kansas.

2.      At all relevant times herein, Defendant Karya is a business duly organized to do business within the State of Kansas.

3.      At all relevant times herein, Karya owned and operated Clear Creek Apartments ("Clear Creek"), a residential apartment complex located in Overland Park, Kansas.

4.      Nitya is the parent company of Karya that owns and oversees management of real estate assets in the United States, including, but not limited to, Clear Creek.

2

5.      Nitya's founder and managing principal, Swapnil Agarwal, issued a "Welcome Letter from the Leadership Team" in Karya's company handbook disseminated to Karya's employees, including Plaintiff Miles. The letter reads in part, "… "from all of us here at Karya, we welcome you to the team! … As leaders of the organization, we do our best so that each team member can achieve professional, personal and financial growth over time. If we can ever be of assistance, if you have any questions or need to discuss any suggestions or problems, please do let us know… Swapnil Agarwal".

6.      The names of Nitya's managing principal, Vivek Shah, and Nitya's managing director at Karya's Management, Manish Patel, also appear as signators on Karya's Welcome Letter contained in Karya's employee handbook issued to Karya's employees, including Plaintiff Miles.

7.      Defendants, at all relevant times herein jointly and separately employed in excess of twenty (20) employees.

8.      Defendants qualify as Miles' integrated employer and/or joint employer for purposes of the claims set forth in this Complaint.

9.      Defendants are entities which act through their agents and employees. They are liable for the conduct of:  their agents and employees, acting within the course and scope of their employment and agency; their own negligence and the acts of their agents that they knowingly ratify; acts done by agents for which the agency relationship allows or assists the agent to perform; and acts its agents take by virtue of their position with Defendants.

## JURISDICTION

10.     Jurisdiction of the Federal Court is invoked because Miles' claims arise under the statutes and laws of the United States, namely Title VII of the Civil Rights Act of 1964, 42 USC 2000e, *et seq*., the Pregnancy Discrimination Act, and

11.     Consolidated Omnibus Budget Reconciliation Act of 1986, 29 U.S.C. § 1161 *et seq*., ("COBRA") and the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA").

12.     Federal subject matter jurisdiction exists pursuant to:

        a.   28 U.S.C. § 1331 and 1343; and

        b.   28 U.S.C. § 1367.

13.     Supplemental jurisdiction exists over Miles' KAAD claims based on 28 U.S.C. § 1367(a).

14.     Defendant Karya employed at least fifteen employees at all times alleged in this Complaint as required under the PDA.

15.     Defendant Karya employed at least twenty employees at all times alleged in this Complaint as required under COBRA.

16.     Defendant Nitya employed at least fifteen employees at all times alleged in this Complaint as required under the PDA.

17.     Defendant Nitya employed at least twenty employees at all times alleged in this Complaint as required under the COBRA.

18.     Jurisdiction exists over Miles' PDA and COBRA claims based upon 28 U.S.C. § 1331, which grants this Court jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States".

19.     Original jurisdiction exists under 28 U.S.C. § 1331 because the amount in controversy exceeds $75,000.00.

20.     Defendants engaged in all of the acts giving rise to the claims against them and described herein in the State of Kansas, and Defendants are engaged in doing busines in Kansas.

## VENUE

21.     Venue is proper in the United States District Court of Kansas pursuant to 28 U.S.C. § 1391 because the acts and omissions which are the basis of Miles' claims arose in Johnson County, Kansas.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

22.     On or about May 21, 2020, Miles dual filed a Charge with the Kansas Human Rights Commission ("KHRC") and the Equal Opportunity Employment Commission ("EEOC") alleging that Defendants engaged in the discriminatory and/or retaliatory actions in violation of the PDA as raised in this lawsuit or, alternatively, all conduct alleged herein in violation of the PDA would have arisen from the investigation of such Charge.

23.     A true and accurate copy of the Charges against Defendants are attached as **Exhibits A and B.**

24.     Generally, Miles' Charge in Exhibits A and B allege, among other things, that Defendants discriminated against her in violation of the PDA and retaliated against her.

25.     Miles filed her Charges against Defendants within 180 days of the relevant events underlying her claims.

26.     On November 19, 2020, Miles requested a right to sue letter from the EEOC.

27.     On December 4, 2020, the EEOC issued a Right to Sue letter regarding Miles' claims pursuant to the PDA (**see Exhibits C and D**).  True and accurate copies of Miles' Right to Sue letters from the EEOC are attached as Exhibits C and D.

28.     On December 7, 2020, the KHRC issued letters administratively closing its file based upon the EEOC's issuance of its right to sue letters and closing their file.  True and accurate copies of the KHRC's December 7, 2020 letters are attached as **Exhibits E and F**.

29.     More than 180 days have elapsed between the date Miles filed her Charges (May 21, 2020) and the date the EEOC issued her right to sue letters (December 4, 2020), and the date the KHRC closed its file.

30.     Miles filed this complaint within ninety days of the EEOC's issuance of its Right to Sue letters and the KHRC's closure of its file.

31.     Miles has filed this suit within the applicable statute(s) of limitations for claims pursuant to the PDA, KAAD.

32.     Miles has exhausted her administrative remedies and has met all conditions precedent to the filing of this action under the PDA and the KAAD.

## FACTS COMMON TO ALL COUNTS

33.     Throughout Miles's five (5) months of employment with Defendants, she was a loyal employee who was ethical and of high integrity.

34.     During the entirety of her employment, Miles worked as a Community Assistant Manager for Clear Creek Apartments ("Clear Creek") in Overland Park, Kansas.

35.     Upon information and belief, Defendants owned Clear Creek in Overland Park, Kansas during the entirety of 2019 and 2020.

36.     Defendants operated Clear Creek in Overland Park, Kansas during Plaintiff's employment with Clear Creek.

37.     In December 2019, Karya hired Nicole Moore ("Moore") as Community Manager for Clear Creek.

38.     Moore's job duties included supervising Karya's employees at Clear Creek, including Miles.

39.     Shortly after Karya hired Moore, Miles advised Moore that she was six (6) months pregnant.

40.     Moore immediately asked Miles for her due date and how much time Miles intended to be out following the birth of her baby.

41.     Miles advised she intended to take eight weeks of leave following the birth of her baby.

### A.  <u>Moore retaliated against Miles in multiple ways<br>in an effort to cause Miles to resign</u>

42.     During the next few weeks, Moore retaliated against Miles in multiple ways in an effort to cause Miles to resign.

43.     The acts of retaliation included Moore directing Miles to move out of her office and relocate to a desk in the front lobby next to the apartment's leasing agent.

44.     Moore justified her directive to Miles by claiming the leasing agent needed help during busy times.

45.     However, Miles already assisted the leasing agent anytime he needed help, and the volume of business slowed during the winter months.

46.     Additionally, Moore disciplined Miles in writing claiming that Miles arrived twenty minutes late to work.

47.    Miles explained to Moore that she did not arrive late, but rather forgot to clock in.

48.    Miles requested that Moore check the security cameras that were operating to confirm Miles was on time and simply forgot to clock in.

49.    Miles also requested that the write-up reflect that she forgot to clock in as opposed to being late for work.

50.    Upon information and belief, Moore ignored Miles' request to revise the write-up and instead left the write-up in Miles' personnel file that reflected she showed up twenty minutes late to work.

51.    Miles later learned from her coworker that after issuing the write-up, Moore asked the coworker if he thought the write-up would cause Miles to quit.

52.    Further, Moore discussed confidential personnel matters concerning Miles with other staff members.

53.    Miles overheard Moore's remarks and requested Moore address her concerns with Miles directly in private instead of speaking ill of her and revealing confidential personnel information about her to other staff members.

54.    Moore ignored Miles' expressed concerns.

55.    Further, Moore isolated Miles daily in front of her peers.

56.    Each morning, Moore greeted everyone in the office except Miles.

57.    At the end of the day, Moore said goodbye to everyone except Miles.

### B.  Out of concern for keeping her job, Miles requested her job duties and responsibilities be clarified

58.    After Moore's acts of retaliation, Miles became concerned that Moore would fabricate reasons to terminate Miles' employment.

59.     In particular, Miles was concerned that Moore's expectation that she perform leasing agent duties five hours a day would interfere and prevent her from completing her duties and responsibilities as Assistant Manager.

60.     Miles feared Moore would use her failure to complete her regular duties and responsibilities while also performing leasing agent duties as a reason to justify firing Miles to hide the true reason for wanting to fire Miles, i.e., Miles' pregnancy and need for pregnancy-related leave.

61.     On January 8, 2020, Miles asked Moore to clarify her duties and responsibilities to assure she met Moore's expectations. Miles stated in part, "this is putting stress on me daily that is not good for me, especially being six months pregnant."

62.     On January 8, 2020, Moore and Karya's Human Resources Director, Dale Kurtz ("Kurtz"), met with Miles, with Kurtz attending by phone.

63.     Almost immediately after the meeting began, Kurtz advised Miles that she wanted to make clear before the conversation continued that the Family Medical Leave Act ("FMLA") did not protect Miles regarding her pregnancy because she had not worked for the company for a year.

64.     Kurtz asked Miles if she wanted to continue the conversation.

65.     Miles responded that she did want to continue the conversation.

66.     Kurtz told Miles that Miles was not required to work for Karya, and that other jobs were available with other employers.

67.     Miles reiterated her concern about the lack of clarity in job expectations and stated she needed clarification.

68.     Kurtz advised Miles to comply with Moore's directives, and ended the discussion without any clarification of Miles' job expectations.

**C.  Miles' employment was terminated the following day based upon a fabricated reason**

69.     On January 9, 2020 (the very next morning), Moore called Miles into her office for an unannounced meeting.

70.     After joining the meeting, Miles was informed that her employment was terminated for her alleged "dishonesty" during their January 8, 2020 meeting.

71.     Kurtz's statements shocked Miles. She asked Kurtz to explain the basis for the "dishonesty" allegation.

72.     Kurtz provided no further explanation and said she would not discuss the matter further.

73.     Miles later learned through a coworker that the alleged "dishonesty" involved Miles claiming one of the units was not ready for occupancy when, in fact, it was ready.

74.     Miles never made any such representation concerning the unit's readiness for occupancy.

75.     Miles believes Moore fabricated the allegation as a basis to fire Miles.

76.     Moore's fabricated reason for terminating Miles employment qualifies as pretext.

77.     Defendants also engaged in pretextual conduct by failing to follow their five (5) step progressive discipline policy.

78.     On the same day Defendants terminated Miles' employment, she saw a job posting for her position on ZipRecruiter.

79.     Upon information and belief, Karya posted the job opening on ZipRecruiter for Miles' position before the alleged events of January 8 and 9, 2020.

80.     Within a week to ten days of Karya's termination of Miles' employment, Karya hired a female who was not pregnant as its new assistant manager for its Overland Park operation.

### D.  Miles never received COBRA notice during her pregnancy or months thereafter despite providing Defendants her most recent residential address

81.     At or about August 8, 2019, Miles began her employment with Defendants.

82.     At or about the time of Miles' hiring, she provided Defendants her Shawnee, Kansas residential address while enrolling in Defendants' health insurance coverage provided to their employees employees.

83.     In early October 2019, Miles moved from her Shawnee, Kansas residence to the Clear Creek apartments that are owned and operated by Defendants.

84.     From October 2019 through December 2019, Miles resided at the Clear Creek apartments while employed as the complex's assistant manager.

85.     Defendants were aware of Miles' residency at Clear Creek.

86.     Miles received a twenty (20) percent reduction in her rent from Defendants as a benefit for residing at Clear Creek where she was employed as Defendants' assistant manager.

87.     During December 2019, Defendants terminated the employment of one of Clear Creek's maintenance workers because of his erratic behavior.

88.     Dale Kurtz, Karya's human resources director, advised Miles that she should leave Clear Creek's main office for the day out of concern for Miles' safety because of the maintenance worker's erratic behavior.

89.     In spite of Karya terminating the maintenance worker's employment, he was allowed to continue residing at Clear Creek.

90.     Miles felt unsafe continuing to reside at Clear Creek because of the maintenance worker's erratic behavior and continued presence as a resident at the complex.

91.     Miles was given permission by Prasad Sveipmti, a member of Karya's senior management, to move out of Clear Creek prior to the end of December 2019 without penalty because of Miles' safety concerns regarding the recently discharged maintenance worker.

92.     After moving out of Clear Creek in December 2019, Miles provided her new residential address to her immediate supervisor at Karya.

93.     Miles watched her immediate supervisor at Clear Creek input her new address into Karya's data base.

94.     Miles later received a refund check from the Defendants for her rent overpayment for the month of December 2019 at her new residential address.

95.     A few days after January 9, 2020, the date of Miles' termination from her employment, she returned to the apartment complex's main office and delivered a handwritten note to Nicole Moore, Clear Creek's recently hired manager.

96.     Miles' handwritten note contained her new residential address.

97.     Moore is the same supervisor who Miles has alleged discriminated and retaliated against her because of Miles' pregnancy.

98.     When Miles handed Moore the note, Miles stated the new address was being provided to assure she received her final paycheck and COBRA notice at her new address.

99.     Moore put the handwritten note in her folder and told Miles the address change information was not necessary because Miles' new address had already been entered into Karya's system.

100.    Miles left that day with the understanding that she would receive her COBRA notification at her new address.

101.    After her employment was terminated, Miles received from Karya her last paycheck at her new residential address.

102.    During the remainder of Miles' pregnancy and for many months thereafter, she never received COBRA notice at her new residential address provided to Defendants.

### E.  Miles' emergency room visits for pregnancy complications not covered by health insurance

103.    After Defendants terminated Miles' employment, she experienced medical complications related to her pregnancy.

104.    On February 10, 2020, Miles obtained emergency medical attention at the Overland Park Regional Medical Center at a cost of approximately $6,200.00 for an emergency room visit resulting from pregnancy complications.

105.    While checking into the hospital, Miles was informed that her health insurance coverage in effect while employed by Defendants had lapsed and was no longer in effect.

106.    After Miles was advised by the medical center that she had no insurance coverage, she left a voice mail message with Dale Kurtz, Karya's Human Resources Director, requesting she forward to Miles a COBRA packet at her current residential address so she could enroll.

107.    Miles never received a return call from Kurtz in response to her voice mail message in which she requested he send her a COBRA packet to allow her to enroll.

108.    On March 16, 2020, Miles sought emergency medical attention a second time at Midwest Perinatal Associates ("Midwest Perinatal") of Overland Park, Kansas for additional pregnancy complications.

109.    While checking into Midwest Perinatal, Miles was once again advised that her health insurance had lapsed.

110.    The cost for medical services Miles received at Midwest Perinatal was $843.00.

111.    After Miles was advised by Midwest Perinatal that she had no insurance coverage, she left a second voice mail message with Dale Kurtz, Karya's Human Resources Director, requesting she forward to Miles a COBRA packet at her current residential address so she could enroll.

112.    Miles never received a return call from Kurtz in response to her second voice mail message in which she requested he send her a COBRA packet to allow her to enroll.

113.    Miles was also billed for $750.00 for the delivery of her child that was not covered by her new employer's insurance.

114.    Miles believes that the Defendants' failure to provide her COBRA notice constituted retaliation for her notifying the Defendants of her pregnancy and intent to take extended leave following the birth of her child.

115.    Miles believes her pregnancy and intent to take extended leave were motivating factors in Defendants' decision to terminate her employment.

116.    Miles has suffered lost wages, lost benefits and severe emotional distress due to Defendants' actions.

## COUNT I
## PREGNANCY DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e

117.    Miles incorporates her allegations in paragraphs 1 through 116.

118.    Miles notified Defendants that she was six (6) months pregnant and intended to take eight (8) weeks of extended leave following the birth of her child.

119.    Within a few weeks of Miles announcing her pregnancy and her intent to take eight (8) weeks of extended leave, Defendants terminated Miles' employment.

120.    Defendants' decision to terminate Miles' employment was motivated by Miles' pregnancy, childbirth related medical conditions, and her intent to take eight (8) weeks of leave.

121.    The Civil Rights Act of 1964, 42 U.S.C. 2000e, and the Pregnancy Discrimination Act, prohibit adverse employment actions that are motivated by an employee's pregnancy, childbirth, or related medical conditions.

122.    Defendants' employees and management, including without limitation Moore and Kurtz, were acting within the course and scope of their employment at all relevant times herein.

123.    Defendants' conduct, through its employees, managers and agents, including without limitation, Moore and Kurtz, was intentional, malicious, in conscious and reckless disregard for the rights of Miles, and reflected a conscious indifference to Miles' federally protected rights, entitling Miles to an award of punitive damages.

124.    Miles is entitled to damages for Defendants' discrimination, including but not limited to, emotional distress damages, loss of past and future wages and benefits, punitive damages, a detrimental employment record, and other non-pecuniary losses.

125.    Miles is entitled to recover all of her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter as well as other appropriate equitable relief.

WHEREFORE, Miles prays for judgment against Defendants for actual damages, compensatory damages, and punitive damages, all costs, expenses, expert witness fees and attorneys' fees incurred herein, appropriate equitable relief, for interest at the highest lawful rate, and for such other relief as the Court deems just and proper.

**COUNT II**
**RETALIATION IN VIOLATION OF THE PREGNANCY DISCRIMINATION ACT**
**AND TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e**

126.    Miles incorporates her allegations in paragraphs 1 through 125.

127.    Miles engaged in protected conduct by exercising her rights pursuant to Title VII and the Pregnancy Discrimination Act.

128.    Miles believes Defendants retaliated against her for her exercise of such rights.

129.    Within a few weeks of Miles notifying her immediate supervisor of her pregnancy and intent to take an extended leave following the birth of her child, Defendants terminated Miles' employment for pretextual reasons.

130.    There was a causal connection between Defendants' termination of Miles' employment and her notifying her supervisor of her pregnancy and intent to take an extended leave.

131.    Defendants' conduct was done intentionally, wantonly and with a conscious disregard for Miles' rights. Defendants' conduct renders it liable for punitive damages in an amount sufficient to punish Defendants and to deter Defendants and others from engaging in similar conduct.

132.    Defendants' actions as alleged constitute violations the Pregnancy Discrimination Act and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.*

133.    Defendants' employees and management, including without limitation, Moore and Kurtz, were acting within the course and scope of their employment at all relevant times herein.

134.    As a direct result of the discriminatory and unlawful acts of Defendants, Miles has suffered and sustained damages, including, but not limited to, loss of past and future wages and

benefits, emotional distress, humiliation and suffering, mental anguish, a detrimental employment record, and other non-pecuniary losses.

135.    Defendants' conduct, through its employees, managers and agents, including without limitation, Moore and Kurtz, was intentional, malicious, in conscious disregard for the rights of Miles, and reflected a conscious indifference to Miles' federally protected rights, entitling Miles to an award of punitive damages.

136.    Miles is entitled to recover all of her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter as well as other appropriate equitable relief.

WHEREFORE, Miles prays for judgment against Defendants for actual damages, compensatory damages, and punitive damages, all costs, expenses, expert witness fees and attorneys' fees incurred herein, appropriate equitable relief, for interest at the highest lawful rate, and for such other relief as the Court deems just and proper.

**COUNT III**
**PREGNANCY DISCRIMINATION IN VIOLATION OF**
**THE KANSAS ACT AGAINST DISCRIMINATION, K.S.A. 44-1001 *et seq*.**

137.    Miles incorporates her allegations in paragraphs 1 through 136.

138.    Miles engaged in protected activity requesting extended leave because of her pregnancy.

139.    At all times relevant to his claims, Miles was pregnant, within the meaning of the KAAD.

140.    Defendants' actions as alleged above constitute violations of the KAAD, K.S.A. § 44-1001, *et seq.*

141.    Defendants' employees and management were acting within the course and scope of their employment at all relevant times herein.

142.    As a direct result of the discriminatory and unlawful acts of Defendants, Miles has been caused to suffer and sustain damages, including, but not limited to, loss of past and future wages and benefits, emotional distress, humiliation and suffering, mental anguish, a detrimental employment record, and other non-pecuniary losses.

143.    Defendants' conduct, through its employees and managers was intentional, malicious, in conscious disregard for the rights of Miles, and reflected a conscious indifference to Miles' statutorily protected rights.

144.    Miles is entitled to recover all of her costs, expenses and expert witness fees incurred in this matter as well as other appropriate equitable relief.

WHEREFORE, Miles prays for judgment against Defendants for actual damages, compensatory damages, and all costs, expenses, and expert witness fees incurred herein, appropriate equitable relief, for interest at the highest lawful rate, and for such other relief as the Court deems just and proper.

## COUNT IV
## RETALIATION IN VIOLATION OF
## THE KANSAS ACT AGAINST DISCRIMINATION, K.S.A. § 44-1001 *et seq.*

145.    Miles incorporates her allegations in paragraphs 1 through 144.

146.    Miles engaged in protected activity requesting extended leave because of her pregnancy.

147.    Defendants knew of Miles' protected activity.

148.    The acts committed against Miles included without limitation, terminating Miles' employment.

149.    A causal connection exists between Miles' protected activity and the adverse employment action.

150.    Defendants subjected Miles to unlawful retaliation in violation of the KAAD, K.S.A. § 44-1001, *et seq.*

151.    Defendants' employees and management were acting within the course and scope of their employment at all relevant times herein.

152.    As a direct result of the retaliation and unlawful acts of Defendants, Miles has suffered and sustained damages, including, but not limited to, loss of past and future wages and benefits, emotional distress, humiliation and suffering, mental anguish, a detrimental employment record, and other non-pecuniary losses.

153.    Defendants' conduct, through its employees and managers was intentional, malicious, in conscious disregard for the rights of Miles, and reflected a conscious indifference to Miles' statutorily protected rights.

154.    Miles is entitled to recover all of her costs, expenses and expert witness fees incurred in this matter as well as other appropriate equitable relief.

WHEREFORE, Miles prays for judgment against Defendants for actual damages, compensatory damages, and all costs, expenses, and expert witness fees incurred herein, appropriate equitable relief, for interest at the highest lawful rate, and for such other relief as the Court deems just and proper.

## COUNT V
## COBRA AND ERISA VIOLATIONS

155.    Miles incorporates her allegations in paragraphs 1 through 154.

156.    There existed an employer-employee relationship between Miles and Defendants.

157.    Defendants are liable to Miles for an amount calculated pursuant to ERISA, § 502(c)(1) on a daily basis from the date they should have provided COBRA notice to her to the date COBRA notice was provided to her last known residential address.

158.    Defendants were Miles' employers and plan sponsor of a group health insurance plan and employed more than twenty (20) employees at all relevant times.

159.    Miles participated in Defendants' group health insurance plan.

160.    Upon Miles' termination of employment, Miles made known her intent to exercise her rights pursuant to the Consolidated Omnibus Budget Reconciliation Act (COBRA) 29 U.S.C. § 1162 *et seq*.

161.    As a result of Defendants' unlawful actions, Miles was caused to be without insurance.

162.    Defendants failed to give proper written notice to Miles of her COBRA rights and the cancellation of her insurance coverage.

163.    Miles seeks legal penalties, recovery of her costs and expenses up to the maximum allowed by law, including, but not limited to, prejudgment interest, attorneys fees, costs and any and all such other relief this Court or trier of fact may assess.

## **JURY DEMAND**

Miles demands a trial by jury on all matters that may be so tried.


                              Respectfully submitted,

                              **COLANTUONO GUINN KEPPLER LLC**

                              By: */s/Richard Guinn*
                              Richard Guinn (KS#10432)
                              Bayli Martin (KS #28301)
                              7015 College Blvd. Suite 375
                              Overland Park, Kansas 66211
                              913.345.2555
                              913.345.2557 facsimile
                              rg@ksmolaw.com
                              bmm@ksmolaw.com

                              **ATTORNEYS FOR PLAINTIFF MILES**

# EXHIBIT A

Received EEOC KCAO 5-21-2020

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| | ☐ FEPA | 563-2020-02004 |
| | ☒ EEOC | |
| Kansas Human Rights Commission | | and EEOC |
| *State or local Agency, if any* | | |

| Name *(indicate Mr., Ms., Mrs.)* | | Date of Birth |
|---|---|---|
| Ms. Morgan Miles | | ▮▮▮▮ |

| Street Address | City, State and ZIP Code |
|---|---|
| 1712 E. Cedar St. Apt. 11 | Olathe, KS 66062 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two are named, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. with Area Code |
|---|---|---|
| Karya Kansas Property Management, LLC | over 15 | (832) 962-8845 |
| Street Address | City, State and ZIP Code | |
| 8901 Gaylord Drive Suite 100 | Houston, TX 77024 | |

| Name | No. Employees, Members | Phone No. with Area Code |
|---|---|---|
| Nitya Capital, LLC | over 15 | (832) 962-8845 |
| Street Address | City, State and ZIP Code | |
| 8901 Gaylord Drive Suite 100 | Houston, TX 77024 | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|---|
| | | Earliest — Latest |
| ☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN | | about 1.9.20 |
| ☒ RETALIATION   ☐ AGE   ☒ DISABILITY   ☒ OTHER *(Specify below)* | | ☒ CONTINUING ACTION |

THE PARTICULARS ARE *(if additional paper is needed, attach extra sheet(s)):*

Additional Respondents: Nicole Moore (Community Manager for Karya) and Dale Kurtz (Human Resources Director for Karya)

Karya Kansas Property Management, LLC ("Karya") hired Morgan Miles in August 2019 as its Community Assistant Manager for Clear Creek Apartments in Overland Park, Kansas . Karya owns and operates Clear Creek Apartments. Nitya Capital, LLC ("Nitya") owns Karya. Karya and Nitya jointly employed Miles at all times relevant to this Charge and both entities qualify as Miles' employer for purposes of the Title VII of the Civil Rights Act, the Americans with Disabilities Act Amendments Act and the Kansas Acts Against Discrimination.

In December 2019, Karya hired Nicole Moore as Community Manager for Clear Creek Apartments. Moore's job duties included supervising Karya's employees at Clear Creek Apartments, including Miles. Shortly after Karya hired Moore that she was six (6) months pregnant, Moore immediately asked Miles for her due date and how much time Miles intended to be out following the birth of her baby. Miles advised she intended to take eight weeks of leave following the birth of her baby.

During the next few weeks, Moore retaliated against Miles in multiple ways in an effort to cause Miles to resign, including without limitation, the following: (1) Moore directed Miles to move out of her office and relocate to a desk in the front lobby next to the Apartment's leasing agent. Moore justified her directive by claiming the leasing agent needed help during busy times. However, Miles already assisted the leasing agent anytime he needed help, and the volume of business slows during the winter months; (2) Moore disciplined Miles in writing for arriving twenty minutes late to work. Miles explained that she arrived late after learning of the death of a close friend the previous evening, and needed additional time to gather herself. Moore ignored Miles' explanation and advised her that she would place the write-up in Miles' personnel file. Miles later learned that after issuing the write-up that Moore asked the leasing agent if he thought the write-up would cause Miles to quit; (3) Moore discussed confidential personnel matters concerning Miles with other staff members. For example, Moore told other staff members that Miles needed to get used to Moore's new role as manager, and that Miles hadn't adjusted well to Moore's changes. Miles overheard these remarks and requested Moore address her concerns with Miles directly in private instead of speaking ill of her and revealing confidential personnel information about her to other staff members. Moore ignored Miles' concerns; and (4) Moore isolated Miles daily in front of her peers. Every morning, Moore greeted everyone in the office except Miles, and at the end of the day, she said goodbye to everyone except Miles.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State or Local Agency Requirements* |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| I declare under penalty of perjury that the above is true and correct. | |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*<br>5/15/2020 |
| April 30, 2020 | AMBER WALKER<br>Notary Public – State of Kansas<br>My Appointment Expires 12/10/21 |
| Date          Charging Party Signature | |

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | |

KANSAS HUMAN RIGHTS COMMISSION and EEOC

State or local Agency, if any

THE PARTICULARS ARE (Continued from previous page):

After Moore's acts of retaliation, Miles became concerned that Moore wanted to manufacture reasons to terminate Miles' employment. In particular, Moore's expectation that Miles perform leasing agent duties five hours a day would interfere and prevent Miles from completing her duties and responsibilities as Assistant Manager. Miles feared Moore would use this as a reason to justify firing Miles to hide the true reason for wanting to fire Miles - Miles' pregnancy and need for pregnancy-related leave.

On January 8, 2020, Miles asked Moore to clarify her duties and responsibilities to assure she met Moore's expectations. Miles stated in part, "This is putting stress on me daily that is not good for me, especially being six months pregnant." Moore didn't address Miles' concerns.

On January 8, 2020, Moore and Karya's Human Resources Director, Dale Kurtz, conducted a meeting with Miles, with Kurtz attending by phone. Almost immediately after the meeting began, Kurtz advised Miles that she wanted to make it clear before the conversation continued that the FMLA did not protect Miles as a result of her pregnancy. This statement conflicts with Karya's policies, which specifically includes an FMLA policy for its employees. Kurtz asked if Miles wanted to continue the conversation and Miles said she did. Kurtz told Miles that she wasn't required to work for Karya, and that other jobs available with other employers existed. Miles reiterated her concern about the lack of clarity in job expectations and stated that she needed clarification. Kurtz advised Miles to comply with Moore's directives, and ended the discussion.

On January 9, 2020 (the very next morning), Moore called Miles into her office for an unannounced meeting. When Miles arrived for the meeting, H.R. Director Kurtz, who attended the meeting by phone, terminated Miles' employment for her alleged "dishonesty" during their January 8, 2020 meeting. Kurtz's statements shocked Miles. She asked Kurtz to explain the basis for the "dishonesty" allegation. Kurtz provided no further explanation and said she would not discuss it further. Miles later learned through a representative of Karya that the alleged "dishonesty" involved Miles allegedly claiming one of the units was not ready for occupancy when, in fact, it was ready. Miles never made any such representation concerning a unit's readiness for occupancy. Kurtz fabricated this allegation to justify firing Miles and Kurtz' conduct qualifies as pretext for pregnancy discrimination.

Additional evidence of pretext exists as well. For example, Karya has a 5-step progressive discipline policy. Karya didn't follow this progressive discipline policy when Respondents terminated Miles after skipping over earlier steps in the progressive discipline policy. While the progressive discipline policy recognizes that some circumstances may require immediate termination, allegedly stating a unit was not ready for occupancy when it actually was doesn't fall within these circumstances.

On the same day Karya terminated Miles' employment, she saw a job posting for her position on ZipRecruiter. Based on information and belief, Karya posted a job opening on ZipRecruiter for Miles' position before the alleged events of January 8, 2020.

Miles believes Respondents discriminated and retaliated against her based on her pregnancy in violation of Title VII of the Civil Rights Act, including the Pregnancy Discrimination Act, the Americans with Disabilities Act Amendments Act and the Kansas Acts Against Discrimination. Miles requests: 1) an injunction protecting other employees from discrimination and retaliation; 2) reinstatement or future lost wages in lieu of reinstatement; 3) back pay; 4) legal fees (limited to the claims under federal law); and 5) all damages permitted by Title VII, the PDA, ADA and KAAD.

---

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| I declare under penalty of perjury that the above is true and correct. | |
| 5/15/20<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year)<br>5/15/2020 |

AMBER WALKER
Notary Public – State of Kansas
My Appointment Expires 12/10/21

# EXHIBIT B

Received EEOC KCAO 5-21-2020

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION<br><br>This form is affected by the Privacy Act. See enclosed Privacy Act<br>Statement and other information before completing this form. | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| | ☐ FEPA | 563-2020-02005 |
| | ☒ EEOC | |

| Kansas Human Rights Commission | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Date of Birth |
|---|---|
| Ms. Morgan Miles | ▉▉▉▉ |

| Street Address | City, State and ZIP Code |
|---|---|
| 1712 E. Cedar St.  Apt. 11 | Olathe, KS 66062 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. with Area Code |
|---|---|---|
| Karya Kansas Property Management, LLC | over 15 | (832) 962-8845 |

| Street Address | City, State and ZIP Code |
|---|---|
| 8901 Gaylord Drive Suite 100 | Houston, TX 77024 |

| Name | No. Employees, Members | Phone No. with Area Code |
|---|---|---|
| Nitya Capital, LLC | over 15 | (832) 962-8845 |

| Street Address | City, State and ZIP Code |
|---|---|
| 8901 Gaylord Drive Suite 100 | Houston, TX 77024 |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|---|
| | | Earliest          Latest |
| ☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN | | about 1.9.20 |
| ☒ RETALIATION   ☐ AGE   ☒ DISABILITY   ☒ OTHER (Specify below) | ☒ CONTINUING ACTION | |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Additional Respondents: Nicole Moore (Community Manager for Karya) and Dale Kurtz (Human Resources Director for Karya)

Karya Kansas Property Management, LLC ("Karya") hired Morgan Miles in August 2019 as its Community Assistant Manager for Clear Creek Apartments in Overland Park, Kansas . Karya owns and operates Clear Creek Apartments. Nitya Capital, LLC ("Nitya") owns Karya. Karya and Nitya jointly employed Miles at all times relevant to this Charge and both entities qualify as Miles' employer for purposes of the Title VII of the Civil Rights Act, the Americans with Disabilities Act Amendments Act and the Kansas Acts Against Discrimination.

In December 2019, Karya hired Nicole Moore as Community Manager for Clear Creek Apartments. Moore's job duties included supervising Karya's employees at Clear Creek Apartments, including Miles.  Shortly after Karya hired Moore, Miles advised Moore that she was six (6) months pregnant. Moore immediately asked Miles for her due date and how much time Miles intended to be out following the birth of her baby. Miles advised she intended to take eight weeks of leave following the birth of her baby.

During the next few weeks, Moore retaliated against Miles in multiple ways in an effort to cause Miles to resign, including without limitation, the following: (1) Moore directed Miles to move out of her office and relocate to a desk in the front lobby next to the Apartment's leasing agent. Moore justified her directive by claiming the leasing agent needed help during busy times. However, Miles already assisted the leasing agent anytime he needed help, and the volume of business slows during the winter months; (2) Moore disciplined Miles in writing for arriving twenty minutes late to work. Miles explained that she arrived late after learning of the death of a close friend the previous evening, and needed additional time to gather herself. Moore ignored Miles' explanation and advised her that she would place the write-up in Miles' personnel file. Miles later learned that after issuing the write-up that Moore asked the leasing agent if he thought the write-up would cause Miles to quit; (3) Moore discussed confidential personnel matters concerning Miles with other staff members. For example, Moore told other staff members that Miles needed to get used to Moore's new role as manager, and that Miles hadn't adjusted well to Moore's changes. Miles overheard these remarks and requested Moore address her concerns with Miles directly in private instead of speaking ill of her and revealing confidential personnel information about her to other staff members. Moore ignored Miles' concerns; and (4) Moore isolated Miles daily in front of her peers. Every morning, Moore greeted everyone in the office except Miles, and at the end of the day, she said goodbye to everyone except Miles.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| I declare under penalty of perjury that the above is true and correct. | |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year)<br>5/15/2020 |
| April 30, 2020 | AMBER WALKER<br>Notary Public - State of Kansas<br>My Appointment Expires 12/10/21 |
| Date          Charging Party Signature | |

EEOC Form 5 (9/01)

| | |
|---|---|
| **C**HARGE OF **D**ISCRIMINATION<br><br>This form is affected by the Privacy Act. See enclosed Privacy Act<br>Statement and other information before completing this form. | Charge Presented To:     Agency(ies) Charge No(s):<br><br>☐ FEPA<br><br>☒ EEOC |

KANSAS HUMAN RIGHTS COMMISSION        and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE *(Continued from previous page)*:

After Moore's acts of retaliation, Miles became concerned that Moore wanted to manufacture reasons to terminate Miles' employment. In particular, Moore's expectation that Miles perform leasing agent duties five hours a day would interfere and prevent Miles from completing her duties and responsibilities as Assistant Manager. Miles feared Moore would use this as a reason to justify firing Miles to hide the true reason for wanting to fire Miles - Miles' pregnancy and need for pregnancy-related leave.

On January 8, 2020, Miles asked Moore to clarify her duties and responsibilities to assure she met Moore's expectations. Miles stated in part, "This is putting stress on me daily that is not good for me, especially being six months pregnant." Moore didn't address Miles' concerns.

On January 8, 2020, Moore and Karya's Human Resources Director, Dale Kurtz, conducted a meeting with Miles, with Kurtz attending by phone. Almost immediately after the meeting began, Kurtz advised Miles that she wanted to make it clear before the conversation continued that the FMLA did not protect Miles as a result of her pregnancy. This statement conflicts with Karya's policies, which specifically includes an FMLA policy for its employees. Kurtz asked if Miles wanted to continue the conversation and Miles said she did. Kurtz told Miles that she wasn't required to work for Karya, and that other jobs available with other employers existed. Miles reiterated her concern about the lack of clarity in job expectations and stated that she needed clarification. Kurtz advised Miles to comply with Moore's directives, and ended the discussion.

On January 9, 2020 (the very next morning), Moore called Miles into her office for an unannounced meeting. When Miles arrived for the meeting, H.R. Director Kurtz, who attended the meeting by phone, terminated Miles' employment for her alleged "dishonesty" during that January 8, 2020 meeting. Kurtz's statements shocked Miles. She asked Kurtz to explain the basis for the "dishonesty" allegation. Kurtz provided no further explanation and said she would not discuss it further. Miles later learned through a representative of Karya that the alleged "dishonesty" involved Miles allegedly claiming one of the units was not ready for occupancy when, in fact, it was ready. Miles never made any such representation concerning a unit's readiness for occupancy. Kurtz fabricated this allegation to justify firing Miles and Kurtz' conduct qualifies as pretext for pregnancy discrimination.

Additional evidence of pretext exists as well. For example, Karya has a 5-step progressive discipline policy. Karya didn't follow this progressive discipline policy when Respondents terminated Miles after skipping over earlier steps in the progressive discipline policy. While the progressive discipline policy recognizes that some circumstances may require immediate termination, allegedly stating a unit was not ready for occupancy when it actually was doesn't fall within those circumstances.

On the same day Karya terminated Miles' employment, she saw a job posting for her position on ZipRecruiter. Based on information and belief, Karya posted a job opening on ZipRecruiter for Miles' position before the alleged events of January 8, 2020.

Miles believes Respondents discriminated and retaliated against her based on her pregnancy in violation of Title VII of the Civil Rights Act, including the Pregnancy Discrimination Act, the Americans with Disabilities Act Amendments Act and the Kansas Acts Against Discrimination. Miles requests: 1) an injunction protecting other employees from discrimination and retaliation; 2) reinstatement or future lost wages in lieu of reinstatement; 3) back pay; 4) legal fees (limited to the claims under federal law); and 5) all damages permitted by Title VII, the PDA, ADA and KAAD.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the above is true and correct. | SIGNATURE OF COMPLAINANT |
| 5/15/20<br>Date    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)*<br>5/15/2020 |

AMBER WALKER<br>Notary Public - State of Kansas<br>My Appointment Expires 12/14/21

# EXHIBIT C

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:  Morgan Miles
1712 E. Cedar Street
Apartment 11
Olathe, KS 66062

From:  Kansas City Area Office
Gateway Tower II
400 State Avenue, Suite 905
Kansas City, KS 66101

☐  *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 563-2020-02004 | Natascha Deguire, Area Office Director | (913) 340-8819 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒  More than 180 days have passed since the filing of this charge.

☐  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*[signature]*

DEC 0 4 2020

Enclosures(s)

Natascha Deguire,
Area Office Director

*(Date Mailed)*

cc:  Ashwin Shetty
COO
KARYA MANAGEMENT
8901 Gaylord Dr
Houston, TX 77024

Rick Guinn
COLANTUONO, BJERG, GUINN, KEPPLER LLC
7015 College Boulevard, Suite 375
Del Sarto Building
Overland Park, KS 66211

Enclosure with EEOC
Form 161-B (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),**
**the Genetic Information Nondiscrimination Act (GINA), or the Age**
**Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days of the date you *receive* this Notice.** Therefore, you should keep a record of this date. Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to
consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate
State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of
your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the
charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include
any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters
alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in
some cases can be brought where relevant employment records are kept, where the employment would have
been, or where the respondent has its main office. If you have simple questions, you usually can get answers from
the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint
or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice *and* within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above,
because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge
file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

➢ **Only one** major life activity need be substantially limited.

➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**

➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

**"Regarded as" coverage:**

➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

# EXHIBIT D

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Morgan Miles<br>1712 E. Cedar Street<br>Apartment 11<br>Olathe, KS 66062 | From: | Kansas City Area Office<br>Gateway Tower II<br>400 State Avenue, Suite 905<br>Kansas City, KS 66101 |
|---|---|---|---|

☐  *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 563-2020-02005 | Natascha Deguire,<br>Area Office Director | (913) 340-8819 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X]  More than 180 days have passed since the filing of this charge.

[ ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[ ]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

DEC 0 4 2020

Enclosures(s)

**Natascha Deguire,<br>Area Office Director**

*(Date Mailed)*

cc:  Ashwin Shetty, COO<br>NITYA CAPITAL LLC<br>8901 Gaylord Dr<br>Houston, TX 77024

Jason Levy<br>Levy Law Firm<br>4520 Main St, Ste 1600<br>Kansas City, MO 64111

Rick Guinn<br>COLANTUONO, BJERG, GUINN, KEPPLER LLC<br>7015 College Boulevard, Suite 375<br>Del Sarto Building<br>Overland Park, KS 66211

Enclosure with EEOC
Form 161-B (11/16)

## INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS -- Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit **before 7/1/10** -- *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION -- Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA): The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):

- ➢ The limitations from the impairment no longer have to be severe or significant for the impairment to be considered substantially limiting.
- ➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), "major life activities" now include the operation of major bodily functions, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- ➢ Only one major life activity need be substantially limited.
- ➢ With the exception of ordinary eyeglasses or contact lenses, the beneficial effects of "mitigating measures" (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) are not considered in determining if the impairment substantially limits a major life activity.
- ➢ An impairment that is "episodic" (e.g., epilepsy, depression, multiple sclerosis) or "in remission" (e.g., cancer) is a disability if it would be substantially limiting when active.
- ➢ An impairment may be substantially limiting even though it lasts or is expected to last fewer than six months.

"Regarded as" coverage:
- ➢ An individual can meet the definition of disability if an employment action was taken because of an actual or perceived impairment (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
- ➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- ➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
- ➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**EXHIBIT E**

Landon State Office Bldg.
900 S.W. Jackson St., Suite 568 S.
Topeka, Kansas 66612-1258

**Kansas**
Human Rights Commission

Phone: (785) 296-3206
Fax: (785) 296-0589
TTY (785) 296-0245
800# 1-888-793-6874
www.khrc.net

Melvin J. Neufeld, Chair, Garden City
Harold Schorn, II, Vice Chair, Newton
David Brant, Wichita
Michael Kane, Kansas City
Laurel Searles, Topeka
James Terrones, Olathe

Laura Kelly, Governor
Ruth Glover, Executive Director
Bill Wright, Assistant Director
Barbara Girard, Investigative Admin.
Robert Easterling, Investigative Admin.
Barb Wangerin, Office Manager

December 7, 2020

Rick Guinn
COLANTUONO BJERG GUINN KEPPLER LLC
7015 College Blvd., Ste. 375
Overland Park, KS 66211

RE:  Case No. 42088-20, Miles vs. KARYA KANSAS PROPERTY MANAGEMENT, LLC

Dear Counsel:

The above-referenced complaint was first filed with the U.S. Equal Employment Opportunity Commission (EEOC). The EEOC issued you a right to sue letter for you to file a civil suit against the Respondent. The EEOC closed their file. Accordingly, the above-referenced complaint is being closed administratively effective this date.

Thank you for your cooperation in this matter.

Sincerely,

Robert Easterling
Investigative Administrator

RE/.

# EXHIBIT F



**Human Rights Commission**

Landon State Office Bldg.
900 S.W. Jackson St., Suite 568 S.
Topeka, Kansas 66612-1258

Phone: (785) 296-3206
Fax: (785) 296-0589
TTY (785) 296-0245
800# 1-888-793-6874
www.khrc.net

Melvin J. Neufeld, Chair, Garden City
Harold Schorn, II, Vice Chair, Newton
David Brant, Wichita
Michael Kane, Kansas City
Laurel Searles, Topeka
James Terrones, Olathe

Laura Kelly, Governor
Ruth Glover, Executive Director
Bill Wright, Assistant Director
Barbara Girard, Investigative Admin.
Robert Easterling, Investigative Admin.
Barb Wangerin, Office Manager

December 7, 2020

Rick Guinn
COLANTUONO BJERG GUINN KEPPLER LLC
7015 College Blvd., Ste. 375
Overland Park, KS 66211

RE:   Case No. 42093-20, Miles vs. NITYA CAPITAL, LLC

Dear Counsel:

The above-referenced complaint was first filed with the U.S. Equal Employment Opportunity Commission (EEOC). The EEOC issued you a right to sue letter for you to file a civil suit against the Respondent. The EEOC closed their file. Accordingly, the above-referenced complaint is being closed administratively effective this date.

Thank you for your cooperation in this matter.

Sincerely,

Robert Easterling
Investigative Administrator

RE/